[No. 10,486.]

# THE PEOPLE *v.* LEE FAT.

EVIDENCE—PERJURY—CRIMINAL LAW.—Upon the trial of an indictment for perjury, alleged to have been committed by the defendant in testifying upon the examination of a party charged with felony, the complaint against the latter—sworn to by the defendant—is admissible for the purpose of showing the pendency of the case in which the perjury was alleged to have been committed.

ID.—REPORTER'S NOTES—INTERPRETER.—By an act of the Legislature, the reporter's notes, taken before a committing magistrate upon a preliminary examination for felony, are made *prima facie* evidence of the testimony given; but *held*, that such notes were inadmissible where the testimony was taken through an interpreter.

APPEAL from a judgment for the plaintiff, in the Fifth District Court, County of San Joaquin.

The facts are stated in the opinion.

*A. M. Royston*, and *G. E. McStay*, for Appellants.

*The Attorney-General*, for Respondents.

In bank, MORRISON, C. J.:

The defendant was indicted, tried, and convicted, in the County Court of San Joaquin County, of the crime of perjury.

The indictment charges, that upon an examination of one Ah Sing before the Police Judge of the City of Stockton, the defendant was sworn as a witness, and thereupon testified to a material fact as true which he well knew to be false.

It appears from the transcript that the defendant made a

complaint before the Police Judge of the City of Stockton, charging that Ah Sing committed an assault upon him, the defendant, with intent to commit murder, and thereupon said Police Judge issued a warrant for the arrest of Ah Sing. That an examination of said Ah Sing upon said charge was had before said Police Judge, and on said examination, the defendant being called as a witness on behalf of the prosecution, testified that he did not know Ah Sing, and that Ah Sing was not guilty of the crime with which he was charged. The defendant, Lee Fat, was convicted of the crime of perjury, and sentenced to ten years' imprisonment in the State Prison. From the judgment of conviction he has taken this appeal.

On the trial in the Court below, the prosecution offered in evidence the complaint made by the defendant, charging Ah Sing with the assault. To the introduction of this evidence, the defendant by his counsel objected, and the objection being overruled by the Court, an exception was duly taken. The object of the prosecution was doubtless to show the pendency of the case (*The People* v. *Ah Sing*) in the Police Court, and it was certainly admissible for that purpose. The complaint laid the foundation for the preliminary examination of the case in which the perjury was charged to have been committed. The learned counsel for the defendant treats the complaint as being the proceeding upon which the perjury is predicated, but such is not the fact. The theory of the prosecution is, that the complaint was true, and that in making the complaint the defendant simply swore to the truth. It charges Ah Sing with the crime of assault with intent to commit murder, and the evidence for the prosecution on the trial of the defendant upon the charge of perjury was directed to the proof of that charge. But on the preliminary examination, the defendant testified that Ah Sing was *not guilty*, that he was not the person who committed the assault upon him, and it is for so testifying that he was indicted, tried, and convicted. The case, therefore, clearly comes within § 118 of the Penal Code, which provides that " every person who, having taken an oath that he will testify, etc., truly, before any competent tribunal, etc., in any of the cases in which such an oath may by law be administered, will-

fully, and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury."

The examination was being regularly conducted before a Court of competent jurisdiction, the matter testified to was material to the question before the Court, and an oath which was willfully false constituted the crime of perjury.

The objection to the introduction of the complaint, that it did not appear that it (the complaint) was made by the defendant, is not sustained by the evidence, but on the contrary it appears, with sufficient certainty, that the defendant was the party who made the complaint. Other objections in this connection are not well taken.

The next exception was to the ruling of the Court allowing the prosecution to read on the trial the notes of the phonographic reporter. On the preliminary examination before the Police Judge, the testimony of the defendant was taken down by one Hood, the official short-hand reporter of the County Court of San Joaquin County, and his notes, written out in long hand, were read in evidence on the trial in said Court, for the purpose of proving what defendant swore to on such preliminary examination before the Police Court.

By an act of the Legislature, approved March 26th, 1872, (Laws of 1871–2, page 551) the Judge of the County Court of San Joaquin County was authorized to appoint a phonographic reporter; and by § 1 of said act it provided that such reporter shall, at the request of the District Attorney, appear before the Coroner at any inquest, or before any committing magistrate, in cases of felony, and take down in short-hand the evidence given at such inquest, or any preliminary examination for felony; and § 2 of said act provides that the notes of said reporter shall be taken as *prima facie* evidence of the testimony given upon any trial when such notes are taken.

It is claimed, however, that such notes were not evidence in this particular case, because the evidence given by Lee Fat on the preliminary examination was taken through an interpreter, and therefore the reporter's notes are merely *hearsay evidence.*

In support of the ruling of the Court below, the Attorney-General has cited the authority of Mr. Wharton on Evi-

dence, vol. 1, § 174, and the language there used is as follows :

"Mr. Bentham has observed that to constitute hearsay testimony, it must be separated by the interposition of some appreciable time from its reception from the party from whom it is obtained.   A., a witness in court, for instance, speaks in so low a tone that what he says has to be repeated to the judge ; or a foreigner when examined, has to be interpreted by an interpreter.   In this case the transmission of the witness' evidence is instantaneous, though through the medium of another person, and it is sometimes argued that because such evidence is instantaneous it is not hearsay.   But a sounder reason for the distinction is, that in cases of repetition or interpretation, the inaudible or foreign witness is examined in court, and is therefore responsible ; whereas the extra-judicial witness, whose utterances are reported by another, is not examined in court, and is therefore not responsible."

In support of the text the learned writer refers to several authorities, all of which we have examined, but none of which fully sustain him.   The first case is that of *Swift* v. *Appleton*, 23 Mich. 253, in which it was simply held that the next friend of an infant plaintiff might act as an interpreter on the trial. The next case is that of *The People* v. *Ah Wee*, 48 Cal. 236, where the Court holds "that a conversation between a person indicted for murder and his victim while alive, held partly in Chinese and partly in English, may be proved—that part of it held in English by persons present who understood English only, and that part of it held in Chinese by persons present who understood Chinese, provided that both the accused and his victim understood both languages."   The third and last case referred to by Mr. Wharton is that of *Schearer* v. *Harber*, 36 Ind. 536, where it is held that "evidence of what an interpreter testified as received by him in a foreign language from a witness on a former trial, cannot be given by one who heard the evidence, unless the interpreter be dead, or insane, out of the jurisdiction, or sick, or unable to testify, or, having been summoned, appears to have been kept away by the adverse party." The Court further says: "The interpreter, in the trial of the

cause before the Justice, we may assume, was duly sworn, be-
cause the law required that he should be sworn.   He translated
what the appellant testified to in the German language into
English, and in the latter language delivered it to the Justice
and the jury.   To this extent the interpreter was a witness, and
the case falls clearly within the rule that regulates the introduc-
tion of what a witness testified to on a former trial, which is as
above stated." (1 Greenleaf on Evidence, § 162.)

It will thus be seen that no one of the cases cited by Mr.
Wharton sustains the rule as broadly as stated by him in his
work on Evidence.

In the case of the *State* v. *Thomas*, 64 N. C. 74, the learned
Chief Justice, delivering the opinion of the Court, says : " It is
a cherished rule of the common law that in trials by jury the
witnesses shall be openly examined and cross-examined in the
presence of the parties and of the jury.   An exception is made
in regard to dying declarations, but the exception is restricted
to indictments for homicide against the party who caused the
death.   A relaxation of the rule is also made, so as to admit in
evidence what a witness who is dead swore on a former trial
before a jury or a committing magistrate ; upon the ground
that the accused had the benefit of confronting the witness, and
of cross-examination, and is only deprived of one test of truth,
the presence of the witness before the jury, which loss was
caused by the act of God." (*State* v. *Valentine*, 7 Iredell, 225.)

We have found no case which sanctions the admission of the
evidence which was received in this case, and are of opinion that
the reporter's notes were not competent evidence against the de-
fendant.   Neither the interpreter nor the reporter was offered
as a witness, nor was their absence accounted for, and it was
the right and privilege of the accused to confront and cross-ex-
amine the witnesses in the case.   (Art. 1, § 8, Constitution of Cal.
1849 ;   art. 1, § 13, Constitution of Cal. 1879 ;   Constitution of
the U. S. art. 14, § 1 ;   *Hoke* v. *Henderson*, 4 Dev. [N. C.] 1 ;
*Wynehamer* v. *People*, 13 N. Y. 445–6.)

In our opinion, the interpreter, or some other witness to the
facts, should have been called, on the part of the prosecution, to
prove what the defendant swore to on the preliminary examina-

tion. The defendant would then have had the privilege of cross-examination, which was denied him on the trial of this case.

Judgment and order reversed.

McKINSTRY, J., SHARPSTEIN, J., ROSS, J., McKEE, J., and THORNTON, J., concurred.