# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

-------------------------------
No. 99-50559
-------------------------------

UNITED STATES OF AMERICA,

Plainitff-Appellee,

versus

JOEL MARTINEZ-GAYTAN, also known as JOEL GAYTAN-MARTINEZ,

Defendant-Appellant.

---------------------------------------------------
Appeal from the United States District Court
for the Western District of Texas
---------------------------------------------------
June 5, 2000

Before DAVIS, CYNTHIA HOLCOMB HALL,* and SMITH, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

The instant case requires us to decide under what circumstances a translated confession is insufficiently reliable to excuse the translator's absence from a suppression hearing. We hold that where the particular facts of a case cast significant doubt upon the accuracy of a translated confession, the translator or a witness who heard and understood the untranslated confession must be available for

---
* Circuit Judge of the Ninth Circuit, sitting by designation.

testimony and cross-examination at the suppression hearing before the confession can be admitted. We vacate the district court's denial of Appellant's suppression motion and remand for a new suppression hearing at which Appellant will have the opportunity to cross-examine the translator concerning the confession.

I.

On February 8, 1998, federal agents at the Eagle Pass, Texas port of entry searched the car driven by Appellant Joel Martinez-Gaytan after he attempted to enter the United States. Agents found approximately 75 pounds of marijuana hidden in the vehicle's gas tank. Appellant was immediately placed in a holding cell and was shortly thereafter interrogated by Agent Timothy Hubbard. Along with Agent Hubbard, three inspectors were also present during the interrogation.

Hubbard determined that Appellant did not speak English. Since Hubbard does not speak Spanish, he asked one of the inspectors, Inspector Garza, to serve as a translator. The district court found that Garza read Appellant his Miranda rights in Spanish, discrediting Appellant's testimony that no one ever read him his rights. Appellant declined to sign a form waiving his Miranda rights, but Appellant agreed to answer questions. Appellant answered Hubbard's questions as interpreted by Garza, purportedly saying that he had picked up the vehicle in Mexico, that he knew

the vehicle was "loaded," and that he was to be paid $800 for dropping the vehicle at a local mall in the United States. Appellant said he needed the money for his son's birthday. Garza drafted a synopsis of Appellant's alleged answers in English, but Appellant refused to sign it.[1]

At a pre-trial suppression hearing before a magistrate judge, Appellant objected to all testimony by Hubbard concerning what Appellant had allegedly said in Spanish on the grounds that the testimony was hearsay. The judge overruled Appellant's objections that Hubbard's testimony was hearsay and that, because Hubbard does not understand Spanish, the translated confession was unreliable. The Government did not call Garza as a witness during the hearing, so Appellant had no opportunity to cross-examine Garza about his Spanish fluency, the subtleties or shades of possible meanings in Garza's questions, or Appellant's responses. The magistrate judge denied Appellant's suppression motion, finding that Garza's absence from the hearing violated neither the hearsay rule nor the Confrontation Clause. The magistrate judge also found that Appellant had confessed voluntarily and that Appellant had validly waived his Miranda rights. The district court

---

[1] Obviously, the sensible course of action in this case would have been for Inspector Garza to present Appellant with a confession written in Spanish, which Appellant presumably would have understood, and which could have been translated at trial if necessary.

affirmed those rulings.  Appellant pled guilty to one count of violating 21 U.S.C.

841(a)(1) & (b)(1)(D) and reserved his right to appeal.  Appellant filed a timely

notice of appeal.  We have jurisdiction over the instant appeal under 28 U.S.C. §

1291.

## II.

This Court reviews the lower court's denial of a motion to suppress for clear

error where that denial is based upon live testimony at a suppression hearing.

See United States v. Cardoza-Hinojosa, 140 F.3d 610, 613 (5th Cir. 1998).  The

lower court's determination that Appellant's confession was voluntary is reviewed

de novo, although the factual conclusions underlying that determination are

reviewed for clear error.  See United States v. Garcia Abrego, 141 F.3d 142, 171

(5th Cir. 1998).

## III.

Appellant argues that Garza's absence from the suppression hearing rendered

Hubbard's statements about Appellant's confession unreliable hearsay, and that

Hubbard's absence resulted in a violation of Appellant's rights under the

Confrontation Clause.

We have held that except "in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay." United States v. Cordero, 18 F.3d 1248, 1252 (5th Cir. 1994) (quoting United States v. Lopez, 937 F.2d 716, 724 (2d Cir., 1991) (internal quotation marks omitted)). In so doing, we adopted the reasoning of Lopez and the Ninth Circuit's opinion in United States v. Nazemian, 948 F.2d 522, 525-27 (9th Cir. 1991). Although Cordero, Lopez, and Nazemian all upheld the admissibility of the confession in question, we find the accuracy of the confession at issue here to be less reliable than the accuracy of the confessions in those three cases. In this case, that disparity is sufficiently serious to constitute the kind of "unusual circumstances" to which the Cordero court referred.

In Cordero, the witness testifying, while not fluent in Spanish, did have some knowledge of the language. See 18 F.3d at 1251. In the instant case the Government does not argue that Hubbard has any Spanish-language skills. In Lopez, the court noted that the defendants "offer no reason to doubt the accuracy of" the translation at issue. 937 F.2d at 724. Indeed, both defendants in that case spoke English and heard the translation, but did not correct or question any part of the interpreter's translation. The court noted that "it stands to reason that if she had distorted their conversation they would have noticed it and corrected her." Id.

5

Here, Appellant does not speak English, and asserted in court that what Hubbard claimed to have heard differed in some respects from what Appellant actually said. In Nazemian, "Agent Eaton was not able to understand [defendant's] statements directly, but only heard them as translated by an interpreter, who did not testify at trial." 948 F.2d at 525. But, in contrast to the instant case, Nazemian did not object to the admission of the testimony at trial, so the appellate court reviewed for plain error. Furthermore, in Nazemian, the translator's reliability was buttressed by the fact that she had "continued in that role over a prolonged period and multiple meetings," and the parties had encountered no communication difficulties during that time. Id. at 528.

In determining whether to treat a translator as a mere language conduit, the Nazemian court looked to: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. See id. Applying those factors to the instant case highlights the unreliability of Appellant's purported confession. Here, the Government supplied the interpreter. Although we presume no motive to mislead or distort, we note that Garza's absence from the hearing and a lack of other evidence about him left the district court unable to determine Garza's Spanish

6

fluency.  Moreover, Appellant refused to sign any confession despite having ostensibly just confessed to Garza.  Thus, given the current record, the first, third, and fourth <u>Nazemian</u> factors all caution against treating Garza as a language conduit.

Under <u>Lopez</u> and <u>Nazemian</u>, if a defendant does not take issue with the accuracy of a translation, as reported by one who heard the translation, during the course of the translated conversation or subsequent events, a hearsay problem rarely arises.  For example, as in <u>Nazemian</u>, where a translator functions successfully and the parties encounter no serious communication difficulties over a prolonged period of time, a defendant will find it very difficult to persuade the court that the translated confession should be suppressed on account of its unreliability.  At the suppression hearing in the instant case, Appellant did not take issue with the substance of the translated confession.  However, on two separate occasions, in response to defense counsel's objections, the magistrate judge correctly stated that he would only allow Appellant to answer the question of whether the substance of Hubbard's testimony was truthful for the purpose of resolving the voluntariness issues.  In the magistrate's words, "We're going to the voluntariness of the statement.  And I'm only going to allow it for that type of purpose to see whether he said it versus somebody else put the words in his mouth. . . . I'm not asking him to make a

7

confession and to reiterate the confessions as to the crime. I just want to get to the voluntariness issues. And that's – the questions will be allowed for that purpose and that purpose only. This will not be a judicial confession on the part of the defendant." Thus, it would be improper for this Court to treat Appellant's statements (or lack thereof) at the suppression hearing as an admission that the translation was accurately reported by Hubbard.

In light of our application of the <u>Nazemian</u> factors to the case at bar, we hold that absent in-court testimony by Garza that will help the court assess his reliability as a translator and give Appellant an opportunity to attack the quality of the translation, the district court's decision to deny Appellant's motion to suppress in this case was clearly erroneous. The district court therefore needs to reconsider its suppression ruling with the benefit of a fuller record that contains testimony from Inspector Garza.[2]

IV.

---

[2] The record does not reveal whether either of the two unidentified inspectors present at Appellant's interrogation were fluent in Spanish. If so, and if they can testify concerning the substance of Appellant's purported confession, their presence at a second suppression hearing could cure any hearsay and Confrontation Clause problems.

On the existing record, we easily find enough evidence to affirm the district court's determinations that Appellant confessed voluntarily and validly waived his <u>Miranda</u> rights. However, the district court may choose to reconsider these rulings if it determines that Garza's testimony calls them into doubt. We therefore also vacate the district court's determinations that Appellant's confession was voluntary and that he validly waived his <u>Miranda</u> rights.

V.

For the foregoing reasons, we vacate the district court's order denying Appellant's suppression motion and remand for further proceedings.[3]

VACATED and REMANDED.

---

[3] Although Appellant might have to withdraw his guilty plea or proceed to a trial after having already conditionally pled guilty once before, such a turn of events would not implicate any double jeopardy concerns. The Double Jeopardy Clause is not violated when a criminal defendant pleads guilty while reserving his right to appeal, prevails on appeal, and consequently must either re-plead, endure further pre-trial proceedings, or go to trial.